Good morning and may it please the court. My name is Thomas O'Hagan, known here as the appellant, the plaintiff, and the employee. As I prepared this case I realized there were a few points worth mentioning beyond what was in the brief. First, appeal courts I saw over and over in cases I read do not review findings of fact and overturn them because the courts wisely know seeing a witness and seeing the words on paper are two different things. Seeing the words on paper one cannot judge credibility. Yet here the court below looked at words on paper, don't you ever go over my head, and did not know that Mr. Wallace in his first meeting with me looked at me, barely introduced himself, and said don't you ever go over my head. That gives a meaning to the words that is not there on paper. For that reason alone there's a tribal issue of fact because with that emphasis it becomes clear one inference from his words is that he was perfectly aware of my prior supervisor being fired because I turned him in for unethical conduct and he did not want the same fate to befall him. Is that a critical fact? I think it is your honor. Why is that? Because it is the reason why he retaliated. It's the reason why he set off on a course and it's undisputed of treating my offices differently from any other office in the region. And I might add Hartford offers no reason whatsoever why that occurred. They speculate it could have been budgetary, it could have been something else, but they controlled the declarations of Wallace and Stewart that they put into their summary judgment. These people would have known why they treated my office as they did, they were the ones who did it, but nothing is said as to why and the reason given doesn't even make sense. It could be budgetary. If money's already spent to buy ten computers, the budget is gone. It doesn't matter if they give them to this office or that office, yet they're saying it's somehow a budgetary reason makes sense. They give it to other offices but never to mine. That makes no sense whatsoever. It is clearly a pretext when they say, oh something else was going on. It might have been budgetary, it might have been something else, but it clearly is legitimate business reasons. No, they engaged in things that were not... So your theory is that they retaliated against you by making your office less viable? Is that essentially it? Yes, to create my office a failure as it had to do, and eventually at the time that I left Hartford in March of 2012, the office completely imploded. Essentially every attorney quit within a very short time. The office manager who had been there since I was in high school, it was the only real job she ever had, retired early rather than face more time there. Because as she put it, and as other lawyers put it as well, within the last year or two, every day has been worse than any day I had before this. And that's what happened in my office. That is the retaliation and that is why I have a viable cause of action and this case should be sent back so that my new attorney and I can proceed to trial. Counsel Judge Gould, if I may interject a question please. Yes, your honor. So why is it that the depositions that you wanted to take but couldn't take could not have been scheduled earlier by you? First of all, your honor, they weren't scheduled on me per se. They were scheduled on a former attorney, who is no longer a member of the bar, who abandoned my case. Essentially by the time the depositions were taking place he had already abandoned my case. He already ceased working on it. He did not submit a brief in response to the appeal. He did an extremely poor job opposing the summary judgment. And I would submit I should have a chance to go back and do this discovery analysis case to be set right on track. Okay, thank you. Of course, that's not the way we usually operate. I mean, particularly if you since you are a lawyer and had the ability to be looking over his shoulder. I would submit, your honor, I didn't really have that opportunity. At the time we're talking about I was suffering from a severe depression. I was under the care of a psychiatrist and I was seeing two different therapists every week. At about that time, in fact, my psychiatrist said you need more than this. He put me into an outpatient hospital program where I was seeing group therapy more than one months. I was in no shape to take care of that. That's why I ultimately took inactive status on the bar. I realized that my mental health puts me in a condition where I do not believe I should be representing other people anymore as lawyers do. I was simply a person who went out, hired the best lawyer I could find, so I thought. At one time he may have been a very good lawyer, but it turns out at the end of his career he was a very bad lawyer. He closed up his office. He never gave me his file. He never informed me of what happened. He simply abandoned the case and assured me everything was fine, just as happened in the Lyle case that I cite. Without the depositions, I mean, one question is whether there was anything that could have been done about the depositions, but as you know it's difficult to say that a judge abused his discretion when they weren't noticed till last week anyway. Without them, just see if you can outline what your prima facie case is and why it should have been, or why there was a tribal issue of fact. Your retaliation argument assumes, A, there was a tribal issue of fact as to whether these people knew about your prior claim, and if we assume that, then what? What's the rest of it? Well first, Your Honor, if I may address that question, it is not necessarily true that my case fails, even if Wallace and Stewart had no knowledge of John Crotty's fate. Somebody may well have directed John Crotty to act as he did. Somebody above Wallace and Stewart. The party here in this case is Hartford, not Wallace and Stewart. I want to go forward on the assumption that there was a tribal issue of fact as to whether they knew. What Your Honor, there's no doubt that I engage in protected activity. There is no doubt as a second element of this that I was retaliated against, that there was adverse action taken against me on the job, in that I was denied resources, in that I was effectively demoted by becoming the only manager forced to handle a full caseload in the West, indeed in the country for Hartford, in that I was then forced out of my job through extreme pressure. What then, the From what you just indicated, Counsel, this withholding of resources to your office in Northern California continued after you had gone on medical leave, is that not what I heard you say? No, that's not true, Your Honor. In fact, whenever I had an employee leave, I'm sorry to interrupt, go ahead. When I had an employee leave and I'd asked my supervisor, may I please replace this person, I would not even hear back from them for sometimes a month or two at a part for lack of attorneys. When I left and some other attorneys left, within a matter of a week, Mr. Stewart, my then supervisor, had posted job openings all over the place. He very quickly hired. Faster than he gave me permission just to advertise the jobs, he had attorneys in there and working for him. Ordinarily in a retaliation case, which you don't have any direct evidence of a connection, one key question is the time between the retaliation and the alleged retaliant retaliation. I mean, here, it was a matter of years, right? I mean, you're envisioning a scheme where they decided to spend years debilitating their office and making you miserable and they didn't want to fire you. So eventually, years later, you would leave at the expense of having a terrible operation in Northern California for years. I mean, the question is, is that a sufficiently plausible story that it has to be, that the inference arises from the existing facts? Since the court must engage in all inferences favorable to me as the person responding to the oath for summary judgment, there is a tribal issue fact there. Yes, one could suppose other things, but then the court is not engaging in inferences favorable to me as the court must under the law. Okay, if you want to save any time, you have a minute left. I would like to just thank the court. Thank you very much. Thank you. Good morning. I am Thomas Mackey. I represent the Hartford and thank you for giving us the opportunity to address the case. In the trial court below. Can you speak up a little bit, please? Thank you. In the trial court below, Judge John Walter properly decided and properly ruled that plaintiff could not meet an essential element of his prima facie case with respect to his claims for retaliation, discrimination, or harassment. With respect to, and I'll address them by element with respect to the prima facie cases. Retaliation is obviously really the gravamen of this case. It really is the key claim that the plaintiff is The first is that the plaintiff must have engaged in some protected activity. For the purposes of the motion, Hartford has not disputed that. The second element of the claim is that some adverse employment action occurred. With respect to this motion, that's tenuous, but the alleged adverse action is that there was a lack of resources, apparently, in what was the largest office in the, they call northern California. Hartford has not put in any evidence to the contrary. With respect to the second element, that is true. What we have focused on. Whether that's an adverse employment action might be a legal question, but in terms of whether this in fact occurred, and whether it was less than in other offices, or whether, or what the reasons were this may have happened, none of that is in the record. Is that right? That's absolutely right, because frankly, in this case, it would be very finely detailed from a factual perspective. I'm sorry? Because why? I'm not hearing. Because to delve into that would be very factually detailed. That's what summary judgment is for. If there's, if there's a potential for, let me put it this way, if Hartford made the decision that that particular element, the second element of the retaliation claim, it was not worthwhile to address the issue on summary judgment. So you're essentially saying that everything does hang on this question of whether they knew about it? No. The question hangs on the third element of the retaliation claim, which is whether there is a causal connection of any type between the protected activity on the one hand, and the adverse action on the other. And here, under the proper interpretation of Rule 56, there is no possible connection for two things. I mean, Mr. Wallace and Mr. Stewart did not know about the protected activity. Well, that isn't entirely undisputed. I mean, there is a fact in the record, i.e., that something was said to him at the outset of the new person coming in about not going over his head. Right? So either you think that was just an idle comment, triggered by nothing, or you think it was triggered by something. It requires speculation, is the problem. Okay. That's what an inference is. Also, but it has to be a reasonable inference, because also in the record, at Excerpts of Record 330, is a follow-up email, which Mr. Wallace sent to not just the appellant, but to all of the managers of all of the offices, reiterating the very specific instruction, which is, come to me, and then followed that up by saying, of course, if you have a complaint about me, you should go to Human Resources. So the totality of the facts that are in the record render the interpretation that that statement somehow means that Mr. Wallace was aware of a complaint that appellant made speculative. But there's another key reason that the causal connection on the third claim, with respect to the retaliation claim, cannot be met, and that is that there's no way to draw a conclusion that somehow a lack of resources in the Northern California office, which is the largest office in the region, was because of, or was designed as an intended... Certainly, it would be a very foolish and odd way for a company to get back at somebody, but I suppose it's not impossible. Well, but not impossible is not the standard. It must be a reasonable inference. You used the word plausible, Your Honor, a moment ago. Inferences based upon facts, it is not correct to say that all inferences must be drawn in favor of the non-moving parties. They must be plausible. They must be reasonable. And here, you would have to come to the conclusion. Now, just to set the stage, Mr. Wallace was originally the direct supervisor of the Western region for the appellant. He was promoted so that he's now the national manager, and Mr. Stewart is the regional manager. So now we have Mr. Stewart, who's directly responsible for the Northern California office, and we have Mr. Wallace, who's responsible for the entire nation, and we're dealing with one of the largest offices for the company. And by the way, let's not minimize the fact that we're dealing with lawyers, and we're dealing with lawyers who are representing insureds on legal claims. So you don't have to just draw the conclusion that somehow these two managers are willing to sacrifice their careers by causing this large office to fail. You also have to draw the conclusion that in so doing, they are potential adverse legal results. But that's why it seems so peculiar that Hartford hasn't countered any of the accusations, because right now what you have is a bunch of unrefuted accusations that you, even retaliatory or otherwise, drove this office into the ground. But if you actually look at the record and what those accusations are, and you can see it specifically in Mr. O'Hagan's declaration submitted in the motion, they are an attorney retired and wasn't replaced soon enough, another attorney resigned and wasn't replaced soon enough. Also on the record, by the way, is that there was another attorney hired into that office, but that hiring fell through at the last minute. This was in the Oakland portion, and therefore that attorney wasn't hired. And then a paralegal resigned. These are not the actions that can be interpreted as the sort of actions that would be intended in a retaliatory way to force the plaintiff out of his job. That's why what we're focusing on is the fact that on the third element of the cause of action, you cannot establish the causal element. Can I ask you about my actual reaction to this case? It happens so often in these cases. Why did we just have these two depositions go forward and then we just wouldn't be here? I mean, it's so, either on your behalf or on the judge's behalf, why we... I mean, one was suspended for no defined reason, and the other had this guy in the hospital. I understand he was late. I understand they should have done it earlier. But there's just legal complications created for no good reason. I'm sensitive to that. The standard for the Rule 56D... I understand the standard, and you also could have said, well, fine, we'll extend it. We were first made that request in opposition to the motion. In other words, there was no meet and confer beforehand, can we, should we, shall we? If there had been, I may have actually considered it because of the fact that Mr. Stewart was hospitalized and it was very serious. I would like to point out, though, that with respect to the argument made by appellant regarding the reasons for those late depositions, those reasons that he has now stated and were first raised in his reply brief were that his attorney had abandoned the case. Nowhere below and nowhere in his opening brief did the appellant ever assert that the depositions were not taken for that... So that's not the question. The question is just really, you know, whether it's really worth in litigating, creating these kinds of complications. Yes. The one other thing that I would add with respect to those depositions is that there still has been no clearly articulated explanation, articulated explanation, of the evidence that might result from those depositions that might actually have something to do with this motion. There are two things that the appellant stated that he thought he would get out of it. One was he could somehow potentially attack the credibility of Mr. Wallace and Mr. Stewart and cause them to fall on their knees and admit that they really did know about the complaint. And the second is that he would adduce some facts regarding the amount of staffing in the offices. But again, when you go to the elements of these causes of action, whether it's the third element of the retaliation claim or the fourth element of the discrimination claim, which is that there must be some indicia of discriminatory motive, neither of those two points would move the ball. Okay. Thank you. I've got 49 seconds, but I think unless you have further questions, I'm fine. Thank you very much. Good morning again, Your Honors. Counsel over and over again referred to plausible inferences. I would submit that's exactly what you're not supposed to do on summary judgment is to decide what's plausible and what's not. That's questions of facts for the jury. I mean, you're asking to infer causation, and even the case law that says three months is plausible and six months isn't is about plausible, right? There is a point where evidence becomes pure speculation, and I would agree, Your Honor, that at that point the court can't say there's a tribal issue of fact. I just don't think this is that case. Mr. Stewart and Mr. Wallace retaliated against me because they knew I went over my prior boss's head and he was fired for it, quite simply. All right. Thank you very much. Thank both of you for your arguments.
judges: Gould, Berzon, Steeh